John F. Renzulli (*Pro Hac Vice*)
jrenzulli@renzullilaw.com
Christopher Renzulli (*Pro Hac Vice*)
crenzulli@renzullilaw.com
Scott C. Allan (*Pro Hac Vice*)
sallan@renzullilaw.com
Renzulli Law Firm, LLP
One North Broadway, Suite 1005
White Plains, NY
Telephone: (914) 285-0700
Facsimile: (914) 285-1213

Counsel for Defendants Colt's Manufacturing Company LLC; Colt Defense LLC; Patriot Ordnance Factory; Lewis Machine & Tool Company; and LWRC International, LLC

[Counsel for additional defendants identified on the signature pages]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES PARSONS, individually and as Special Administrator of the Estate of Carolyn Lee Parsons, and ANN-MARIE PARSONS,<br><br>Plaintiffs,<br><br>v.<br><br>COLT'S MANUFACTURING COMPANY LLC; COLT DEFENSE LLC; DANIEL DEFENSE INC.; PATRIOT ORDNANCE FACTORY; FN AMERICA; FN HERSTAL; HERSTAL GROUP; NOVESKE RIFLEWORKS LLC; CHRISTENSEN ARMS; LEWIS MACHINE & TOOL COMPANY; LWRC INTERNATIONAL LLC; DISCOUNT FIREARMS AND AMMO LLC; DF&A HOLDINGS LLC; MAVERICK INVESTMENTS LP; SPORTSMAN'S WAREHOUSE; and GUNS AND GUITARS INC.<br>      Defendants. | **Case No. 2:19-CV-01189-APG-EJY**<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT** |

Defendants[1] respectfully submit this reply in further support of their motion to dismiss Plaintiffs' Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF THE ARGUMENT

Plaintiffs' response in opposition to Defendants' motion to dismiss demonstrates the futility of their position. According to Plaintiffs, the Subject Rifles, and all similar semiautomatic AR-type rifles are "illegal machineguns" because they are allegedly capable of being converted to fully automatic weapons by the addition of bump stocks. Plaintiffs contend that such rifles have been machineguns for decades, yet no one previously noticed, including Congress, the U.S. Supreme Court, the ATF, state legislatures, prosecuting authorities, and law enforcement agencies across the country. As evidenced by their opposition, Plaintiffs are essentially asking this Court to step into Congress's shoes and rewrite the federal definition of a machinegun in 26 U.S.C. § 5845(b) to support their arguments and, in the process, make hundreds of thousands of United States citizens who lawfully manufactured, sold, purchased, and/or possessed AR-type rifles felons overnight.

No legal support exists for Plaintiffs' argument that Defendants have knowingly violated federal and state law by manufacturing and selling illegal machineguns. This Court should also dismiss Plaintiffs' claims for the following reasons:

- Plaintiffs fail to satisfy the PLCAA's predicate exception, or its negligent entrustment and negligence per se exceptions. Consequently, Defendants are entitled to immunity from Plaintiffs' claims.

- Plaintiffs' negligent entrustment claim is fundamentally flawed because Defendants had no control over the Subject Rifles after their manufacture and sale, which control is necessary to maintain such a claim under Nevada law.

- Plaintiffs' negligence per se claim fails because an alleged violation of the statutes upon which Plaintiffs rely does not support such a claim under Nevada law.

- Nevada Revised Statute § 41.131 provides Defendants with immunity from Plaintiffs' claims.

---

[1] This reply brief is filed on behalf of all defendants except for Daniel Defense Inc. and Sportsman's Warehouse.

- Plaintiffs' claims are barred by the superseding criminal acts of the shooter, as well as by their failure to plead causation sufficiently.

As set forth below more fully, Defendants respectfully request that the Court dismiss Plaintiffs' claims with prejudice.

## ARGUMENT

### I.    The Subject Rifles are Not "Machineguns" Under Federal or State Law

Plaintiffs claim their allegations satisfy the predicate exception to the PLCAA, 15 U.S.C. § 7903(5)(A)(iii), because Defendants knowingly violated 18 U.S.C. § 922(b)(4) and Nev. Rev. Stat. § 202.350(1)(b),[2] by manufacturing and selling the Subject Rifles because they are machineguns as defined by 26 U.S.C. § 5845(b). This argument is meritless. A machinegun is defined by the National Firearms Act ("NFA") as:

> [A]ny weapon which [1] shoots, [2] is designed to shoot, or [3] can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include [4] the frame or receiver of any such weapon, [5] any part designed and intended solely and exclusively, or [6] combination of parts designed and intended, for use in converting a weapon into a machinegun, and [7] any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (bracketed numbers added).

Plaintiffs contend the Subject Rifles are machineguns based on the second bracketed definition in 26 U.S.C. § 5845(b) because they are "designed to shoot" automatically. Pls.' Opp'n (ECF No. 88) at 5, 9-13. In support, Plaintiffs quote from a report by a "Task Force on Violent Crime" stating that:

> Another problem we wish to address is the ease of conversion of semi-automatic guns into more lethal and more strictly regulated fully automatic guns . . . . Some manufacturers are producing readily available semi-automatic weapons which can be easily converted to fully automatic weapons by simple tool work *or the addition of readily available parts*.

---

[2] Plaintiffs' Opposition solely addresses their argument that the Subject Rifles are machineguns for purposes of 18 U.S.C. § 922(b)(4), as opposed to Nev. Rev. Stat. § 202.350(1)(b), Pls.' Opp'n at 9 n.5, so this reply will solely address the federal statute as well.

- 2 -

Pls.' Opp'n at 5 (emphasis added by plaintiffs). Plaintiffs contend that it was not necessary to "amend the NFA to address this problem, because the statute already defined a machine gun as "'any weapon . . . *designed to shoot* . . . automatically.'" *Id.* (emphasis added by Plaintiffs).

As Plaintiffs acknowledge, Pls.' Opp'n at 10, the ATF has determined that firearms are considered machineguns based on the "designed to shoot" automatically definition if they "have not previously functioned as machineguns but possess design features which facilitate full automatic fire by simple modification or elimination of e*xisting component parts*." ATF Ruling 82-2[3] (emphasis added). Thus, to meet this definition, a firearm must be able to fire automatically when an existing component part is eliminated or simply modified. Yet Plaintiffs argue that the Subject Rifles are machineguns because they can be modified by *replacing* their butt stocks with bump stocks. Plaintiffs concede that to make the Subject Rifles fire fully automatic, one must remove their existing butt stocks and replace them with bump stocks:

- "A bump stock replaces the stock of an AR-15 and modifies the weapon so that a continuous firing sequence is initiated with a single trigger pull."

- "The first step in modifying an AR-15 with a bump stock is to remove – or eliminate – the existing stock."

- "Next, a separate stock is attached in place of the prior stock and secured."

- "In other words, without the bump stock, the trigger resets after each trigger pull but does not continue firing; with the bump stock, it resets and fires continuously."

*See* Pls.' Opp'n at 5, 13-14 (emphasis added).

While a butt stock is a component part of a rifle, Plaintiffs do not contend that the Subject Rifles will fire fully automatic merely by eliminating, *i.e.*, removing, their existing butt stocks. Nor do Plaintiffs contend that the Subject Rifles will fire fully automatic through a "simple modification" of the buttstocks on the Subject Rifles when they were manufactured and sold. Plaintiffs must satisfy one of these two requirements for a firearm to be considered a machinegun

---

[3] Contrary to Plaintiffs' claim, ATF Rulings are not the regulations that Congress authorized the Attorney General to prescribe pursuant to 26 U.S.C. §§ 7801(a)(2)(A) & 7805. Pls.' Opp'n at 9 n.5. Such regulations are codified at 27 C.F.R. §§ 479.1-193.

based on the "designed to shoot" automatically definition in 26 U.S.C. § 5845(b) as interpreted in ATF Ruling 82-2.[4] Plaintiffs' theory satisfies neither requirement.

Attempting to bolster their argument, Plaintiffs claim that it is "hard to imagine how this *fundamentally different firing mechanism* is not a 'modification' of 'existing component parts.'" Pls.' Opp'n at 14 (emphasis added). Plaintiffs then attempt to dodge the threshold legal issue – whether adding an after-market bump stock is a modification of an existing component part – by claiming that any "disagreement on the technical meaning of 'existing component part' in the context of a bump stock modification . . . cannot be settled at the pleadings stage." *Id.* "Existing" is defined as something "that exists or is being used at the present time."[5] Accordingly, an "existing component part" is a part that was present and installed on the Subject Rifles when they were manufactured and sold by Defendants. Plaintiffs have acknowledged that existing components are not modified when a bump stock is installed. Rather, an existing component (the butt stock) is removed and replaced with a new component (the bump stock). Thus, Plaintiffs' own allegations establish that the Subject Rifles are *not* statutorily-defined "machineguns."

What Plaintiffs are requesting this Court to do is rewrite the definition of machinegun in 28 U.S.C. § 5845(b) to create an eighth category – *i.e.*, a "weapon that can be modified to fire automatically, more than one shot, without manual reloading based on the replacement of existing parts with readily available parts." *See* Pls.' Opp'n at 5 (quoting the Task Force on Violent Crime). Such a definition results in all AR-type rifles – and likely all semiautomatic firearms – being considered illegal machineguns for purposes of federal law and the law of every state that has adopted the federal definition. It would also render the fifth bracketed definition of a machinegun in Section 5845(b), *i.e.*, a "part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun," superfluous and unnecessary, which violates the rules of statutory construction. *Williams v. Taylor*, 529 U.S. 362, 364 (2000).

---

[4] Plaintiffs wrongly claim that based on ATF Ruling 82-2, the "relevant inquiry is *whether* the weapon is being modified – not *how* it is modified." Pls.' Opp'n at 14 n.7 (emphasis by Plaintiffs). ATF Ruling 82-2 makes it clear that *how* a firearm may be modified is dispositive.

[5] https://dictionary.cambridge.org/us/dictionary/english/existing

- 4 -

Through the fifth bracketed definition of a machinegun in 28 U.S.C. § 5845(b), Congress chose to classify the parts used to modify semiautomatic firearms that allow them to fire fully automatic, rather than the semiautomatic firearms themselves, as machineguns. This fifth bracketed definition formed the basis for the ATF recently reclassifying the Slide Fire bump stock as a machinegun. Bump-Stock Type Devices, 83 Fed. Reg. 66,514-54; 27 C.F.R. §§ 478.11 & 479.11 ("a *device that allows a semi-automatic firearm* to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter") (emphasis added).

ATF Ruling 81-4 confirms that a firearm is not a machinegun simply because it is capable of being modified by exchanging one of its existing parts with a new component part, such as a bump stock or an auto sear. In Ruling 81-4, the ATF held that an auto sear was a machinegun based on the sixth bracketed definition in 26 U.S.C. § 5845(b), *i.e.*, a "combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." Plaintiffs' argue unpersuasively that this Court should ignore ATF Ruling 81-4 because it was issued before ATF Ruling 82-2, and that the ATF's characterization of AR-type rifles as semiautomatic does not mean that they are not machineguns. Pls.' Opp'n at 14.

The order in which the ATF rulings were issued is irrelevant, and no basis exists for Plaintiffs' claim to the contrary. The language in 26 U.S.C. § 5845(b) that both rulings discuss did not change and the rulings address different issues. The ATF's characterization of the AR-15 rifles in which the auto sears could be installed as semiautomatic is not the important issue. What is important is that the ATF did not consider AR-15 rifles, the same type of rifles as the Subject Rifles at issue in this case, to be machineguns unless an auto sear was installed in them.

Like the ATF, the Supreme Court also does not consider AR-type rifles to be "machineguns." In *Staples v. United States*, 511 U.S. 600 (1994), the Court clearly recognized that:

> *The AR-15 is* the civilian version of the military's M-16 rifle, and *is, unless modified, a semiautomatic weapon*. The M-16, in contrast, is a selective fire rifle that allows

- 5 -

> the operator, by rotating a selector switch, to choose semiautomatic or automatic fire. *Many M-16 parts are interchangeable with those in the AR-15 and can be used to convert the AR-15 into an automatic weapon.*

*Id.* at 603 (emphasis added). Plaintiffs ask this Court to ignore *Staples* because the Supreme Court did not specifically address the issue of whether AR-type rifles are machineguns based on the "designed to shoot" automatically definition.[6] As the decision makes clear, the Supreme Court implicitly rejected the argument that AR-type rifles are "machineguns." The reason why this issue was not more specifically addressed is because the argument is far-fetched and legally unsupportable.[7] If all AR-type rifles are machineguns on the basis that they were "designed to shoot" automatically (as Plaintiffs argue), there would have been no need in *Staples* for the prosecution to instead focus on the issue of whether defendant's particular AR-type rifle was a machinegun based on the modification of existing component parts. *Id.* at 603. Rather, the defendant could have been charged and convicted for possessing a "machinegun" simply because he possessed an unmodified semiautomatic AR-type rifle, capable of being converted to a machinegun.[8]

---

[6] Plaintiffs' argue that *Staples* is not controlling authority because it did not address the meaning of the terms "automatically" or "single function of the trigger." Pls.' Opp'n at 17 n.9 (citing *United States v. Olofson*, 563 F.3d 652, 657 (7th Cir. 2009) and *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 29 (D.C. Cir. 2019)). Defendants' motion to dismiss did not cite to *Staples* with regard to those terms, or even rely on those terms for the arguments it raised, so it is difficult to comprehend the significance of Plaintiffs' argument.

[7] A firearm is a "machinegun" as defined by 26 U.S.C. § 5845(b) under either the first bracketed definition, "shoots automatically," or the second bracketed definition, "designed to shoot" automatically. Therefore, it is not relevant whether the AR-15 rifles at issue in *Staples* would shoot automatically in the condition in which they were manufactured. See Pls.' Opp'n at 17. Based on Plaintiffs' argument, they would have been machineguns based on the "designed to shoot" automatically definition and have been just as illegal.

[8] In the motion to dismiss, Defendants referenced the Supreme Court's holding that the NFA "does not suggest that any significance should attach to readily convertible semiautomatics, for that class bears no relation to the definitions in the Act. . . . The parties assume that virtually all semiautomatics may be converted into automatics . . . ." *Staples*, 511 U.S. at 612 n.6. Plaintiffs incorrectly claim that Defendants have misconstrued this footnote and that it only addresses *mens rea*. Pls.' Opp'n at 18. The footnote in the majority opinion is addressing the fact that while machineguns are illegal, regular firearms are not, and a person cannot be held to have knowledge that he is in possession of a machinegun simply because it is a semiautomatic firearm that is readily convertible into a machinegun because that class of firearms "bears no relation to the definitions in the [NFA]." *Staples*, 511 U.S. at 612 n.6. If this Court accepts Plaintiffs' argument, "every owner

The United States Department of Justice ("DOJ") recently rejected the arguments made by Plaintiffs in a challenge to the federal ban on bump stocks resulting from the very shooting at issue in this case. In *Gun Owners of America, Inc. v. Whitaker*, the DOJ's brief in opposition to the plaintiffs' motion for a preliminary injunction rejected plaintiffs' argument that the ATF's rule change could result in the AR-type rifles on which the bump stocks are designed to be installed being classified as machineguns, and suggested that the Second Amendment would prohibit banning "the most popular semiautomatic rifles in America" as machineguns.[9]

Based on Plaintiffs' interpretation of the "designed to shoot" automatically definition, all semiautomatic AR-type rifles have been machineguns since at least 1982, and potentially since they were first sold in the 1960s. Pls.' Opp'n at 4-5. If this Court were to accept Plaintiffs' argument, it would mean that until the filing of Plaintiffs' Complaint in July 2019, no one realized that semiautomatic AR-type rifles are actually machineguns under the "designed to shoot" automatically definition. Thus, Plaintiffs' position requires acceptance of the following absurd conclusions:

- Congress performed a meaningless act in 1994 when it enacted the assault weapons ban, 18 U.S.C. § 922(v)(1), which defined a "semiautomatic assault weapon" in relevant part as a "Colt AR-15" and "copies or duplicates" of the AR-15 in any caliber, *id.* § 921(a)(30)(A)(iv), because those rifles would have already been banned as machineguns.

- The DOJ has not prosecuted Defendants for illegally manufacturing and selling AR-type rifles to civilians on the basis that they are machineguns despite the fact that the manufacture and sale of new machineguns (under any of the definitions in 26 U.S.C. § 5845(b)) to the civilian market has been illegal since May 19, 1986. *See* 18 U.S.C. § 922(o)(1).

---

of a semiautomatic rifle or handgun would potentially meet such a *mens rea* test, *i.e.*, they would knowingly be in possession of an illegal machinegun. *Id.*

[9] DOJ's Brief at 23-24 (quotation marks and citation omitted), a copy of which is attached as Exhibit A. The DOJ also noted that the separate definition of a semiautomatic rifle precludes interpreting "ordinary semiautomatic rifles as machineguns." *Id.* at 24 n.15. It characterized an argument – which Plaintiffs make in this case – that AR-type rifles are machineguns because they can be made to fire "automatically" using the shooter's body, a belt loop, or a rubber band as absurd. *Compare id.* at 22-23 *with* Pls.' Opp'n at 4 n.4, 11-12, 16. Plaintiffs acknowledge that for AR-type rifles without a bump stock attached, the "trigger resets after each trigger pull but does not continue firing," Pls.' Opp'n at 14, thereby conceding that they do not meet the definition of a machinegun in 28 U.S.C. § 5845(b).

- When the ATF required retail dealers in the four states bordering Mexico to report multiple sales of AR-type rifles to the ATF in 2011 to help combat illegal trafficking across the border, it did so unnecessarily because those rifles were already illegal to sell because they are machineguns. *See 10 Ring Precision v. Jones*, 722 F. 2d 711 (5th Cir. 2013).

- The legislatures in seven states (California, Connecticut, District of Columbia, Maryland, Massachusetts, New Jersey, and New York) needlessly banned sales of AR-type rifles because they were already illegal machineguns under federal law. *See* Cal. Penal Code § 30500; Conn. Gen. Stat. § 53-202a; D.C. Stat. § 7-2501.01(3A)(A)(i)(I)(ee); Md. Public Safety Law § 5-101(r)(2)(xv); Mass. Gen. Laws Ch. 140 § 131M; N.J. Stat. § 2C:58-12; and N.Y. Penal Law § 265.00(22)(h). And in those states where "grandfathered" possession of banned rifles was permitted, state legislatures made it lawful to possess machineguns.

The simple fact of the matter is that the Subject Rifles are not machineguns based on the "designed to shoot" automatically definition, or any of the other definitions in 26 U.S.C. § 5845(b). Plaintiffs' claim that Defendants knowingly violated 18 U.S.C. § 922(b)(4) by allegedly manufacturing and selling machineguns fails to raise even a colorable claim to satisfy the predicate exception to the PLCAA.[10]

## II. Plaintiffs Do Not Have a Valid Negligence Per Se Claim

In their Motion to Dismiss, Defendants argued that Plaintiffs do not have a valid negligence per se claim for two reasons: (1) only the violation of statutes designed for the protection of a certain class of persons to which plaintiffs belong can serve as the basis for a negligence per se claim;[11] and (2) violation of a penal statute is not negligence per se in the absence of legislative intent to impose civil liability. Mot. to Dismiss (ECF No. 80) at 9-10. In their Opposition, Plaintiffs only addressed Defendants' second argument, improperly assuming that the statutes at issue are designed to protect a class of persons consisting of "*members of the public*," from "physical injury and death caused by machineguns." Pls.' Opp'n at 19 (emphasis added). A statute designed for

---

[10] Even if Plaintiffs' argument was meritorious (which it is not), the predicate exception only applies where Defendants *knowingly* violated a state or federal statute applicable to the marketing or sale of firearms. 15 U.S.C. § 7903(5)(A)(iii). This begs the question: if every authoritative source (Congress, the Supreme Court, the DOJ and the ATF) have concluded that standard AR-type rifles are not machineguns as defined by 18 U.S.C. § 5845(b), how could Defendants have knowingly violated this statute at the time they manufactured and sold the Subject Rifles?

[11] For purpose of negligence per se, "whether an injured party belongs to the class of persons that the provision at issue was meant to protect" is an issue of law for the court. *Vega v. Eastern Courtyard Associates*, 24 P.3d 219, 222 (Nev. 2001).

- 8 -

the protection of the entire public is the opposite of a statute designed for the protection of a specific class of persons and therefore, based on Plaintiffs' own arguments, an alleged violation of 18 U.S.C. § 922(b)(4) does not constitute negligence per se pursuant to Nevada law.[12]  Plaintiffs rely on *Southern Pac. Co. v. Watkins*, 435 P.2d 498 (Nev. 1967) for the proposition that the violation of a criminal statue can serve as the basis for a negligence per se claim.  Pls.' Opp'n at 19.  In *Watkins*, a locomotive failed to ring a bell or sound a whistle at a railway crossing in violation of Nev. Rev. Stat. § 705.430, a statute designed for the protection of a limited class of persons, *i.e.*, motorists using the railway crossing.  That statute is of the exact same character as the various traffic statutes cited by Defendants, the violation of which may constitute negligence per se.  Mot. to Dismiss at 10.

Plaintiffs incorrectly assert that Nevada deviates from the general rule that violation of a penal statute is not negligence per se in the absence of legislative intent to impose civil liability for such a violation and, that in Nevada, this general rule is limited to the provision of alcohol.  Pls.' Opp'n at 20.  *Hamm v. Carson City Nugget*, 450 P.2d 358, 360 (Nev. 1969) does not support Plaintiffs' argument, and instead supports Defendants' position, holding that an alleged violation of Nev. Rev. Stat. § 202.100 did not constitute negligence per se because it was part of the "statutory scheme regulating the sale of tobacco and intoxicating liquor . . . ."  The statutes barring the manufacture and sale of machineguns upon which Plaintiffs rely are similarly an inappropriate basis for a negligence per se claim, because they are not designed for the protection of a specific class of persons, but rather are part of the statutory scheme regulating the sale of firearms.

### III.   Plaintiffs Do Not Have a Valid Negligent Entrustment Claim

Plaintiffs ask this Court to recognize a previously unrecognized negligent entrustment action under Nevada law against product manufacturers and retail sellers who have relinquished control of products to their buyers at the time of sale. Because Nevada state courts have not recognized this cause of action, this Court must predict whether Nevada's highest court would

---

[12] *See, e.g.*, *Anderson v. Baltrusaitis*, 944 P.2d 797, 799-800 (Nev. 1997) (holding that Nev. Rev. Stat. § 484.327(1) is intended for the protection of pedestrians, not motorists); *Ashwood v. Clark County*, 930 P.2d 740, 744 (Nev. 1997) (holding that a good Samaritan was not a member of the class of persons intended to be protected by the panic hardware provision in the building code).

- 9 -

create a right to maintain such a claim. *See Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 434-435 (9th Cir. 1978). In their Opposition, Plaintiffs do not cite to a decision on which this Court can reasonably predict the Nevada Supreme Court's recognition of this cause of action.

Indeed, the only case Plaintiffs cite supports the opposite conclusion, namely that the Nevada Supreme Court *would not* recognize a negligent entrustment action against product manufacturers and sellers because they relinquish the right to control the product at the time of sale. In *Mills v. Continental Parking Corp.*, 475 P. 2d 673 (Nev. 1970), the court unanimously affirmed the dismissal of a negligent entrustment action against the operator of a parking garage because the garage had surrendered its right to control the car to its owner, who was later involved in an accident. The court held that a negligent entrustment theory "does not apply when the right to control is absent." *Id*. at 726. The court reasoned that imposition of civil liability where the right to control the instrumentality has been surrendered would lead to "unforeseeable consequences limited only by the scope of one's imagination." *Id*. The court declined to "venture into that wonderland." *Id*.

In their Opposition, Plaintiffs do not even address Defendants' alternative basis on which the Court should dismiss their negligent entrustment action: failure to plead facts (or even unsupportable conclusions) suggesting that any Defendant knew or reasonably should have known the specific purchaser of the Subject Rifles was likely to use them criminally. *See* 15 U.S.C. § 7903(5)(B). It is not enough to simply plead that an entrusted product is capable of being used dangerously to cause harm. *See Soto v. Bushmaster Firearms Int'l, LLC*, 2012 A.2d 262, 283 (Conn. 2019) (rejecting argument that the mere commercial sale of "assault weapons" to civilian users generally constitutes negligent entrustment). The "vitally important" element of the tort is the entrustor's alleged knowledge of the specific entrustee and his intended and likely use of the potentially dangerous instrumentality. *Turner v. American Dist. Tel. & Messenger Co.*, 110 A. 540, 543 (Conn. 1920). Plaintiffs' Complaint wholly omits factual allegations on this vitally important element.

### IV. Plaintiffs' Claims are Barred by Nevada Revised Statute § 41.131

As Defendants' noted in their Motion to Dismiss, Nevada Statute § 41.131(1) states that no one has a "cause of action against the manufacturer or distributor of any firearm or ammunition merely because the firearm or ammunition was capable of causing serious injury, damage or death, was discharged and proximately caused serious injury, damage or death." The only exception to this general prohibition is for a "cause of action based upon a defect in design or production," *id.* § 41.131(2), which Plaintiffs do not raise. Plaintiffs argue that their claims are not barred by Section 41.131(1) because they allege that "Defendants knowingly violated state and federal statutes by selling machineguns." Pls.' Opp'n at 23. As explained in Section I, however, the Subject Rifles are not machineguns and Defendants did not violate federal or state law by manufacturing or selling them. Plaintiffs' claims are therefore reduced to nothing more than the fact that the Subject Rifles are capable of causing serious injury, damage or death when discharged, and such claims are barred by Section 41.131(a).

### V. Plaintiffs Have Not Sufficiently Pleaded Causation

In their motion to dismiss, Defendants explained why Plaintiffs have failed to sufficiently allege that Defendants proximately caused their damages. In response, Plaintiffs claim that they have established causation simply because Defendants sold AR-type rifles, which they characterize as the "weapon of choice for mass shooters looking to inflict maximum casualties." Pls.' Opp'n at 22 (quoting Compl. ¶ 102). Plaintiffs further repeat their baseless claims that the Subject Rifles are machineguns. *Id.* at 22-23. As discussed in Section I, the Subject Rifles were legally manufactured and sold by Defendants, and are not machineguns. Simply because AR-type rifles are allegedly the weapon of choice for mass shooters, does not render an intentional, criminal shooting reasonably foreseeable as required to prevent the chain of proximate causation from being broken. *Price v. Blaine Kern Artista, Inc.*, 893 P.2d 367, 370 (Nev. 1995). Plaintiffs' argument is the equivalent of a claim that manufacturers and sellers of sedans may be held liable for the damages incurred by intoxicated drivers, simply because sedans are the "vehicle of choice" of most intoxicated drivers.

- 11 -

## CONCLUSION

For the reasons stated above, Defendants respectfully request that Plaintiffs' Complaint be dismissed with prejudice.

Dated December 20, 2019.

Respectfully submitted by:

| | |
|---|---|
| */s/ Scott C. Allan* <br> John F. Renzulli (*Pro Hac Vice*) <br> jrenzulli@renzullilaw.com <br> Christopher Renzulli (*Pro Hac Vice*) <br> crenzulli@renzullilaw.com <br> Scott C. Allan (*Pro Hac Vice*) <br> sallan@renzullilaw.com <br> Renzulli Law Firm, LLP <br> One North Broadway, Suite 1005 <br> White Plains, NY <br> Telephone: (914) 285-0700 <br> Facsimile:  (914) 285-1213 <br><br> Counsel for Defendants Colt's Manufacturing Company, LLC, Colt Defense, LLC, Patriot Ordnance Factory, Lewis Machine & Tool Company, and LWRC International, LLC <br><br> */s/ Jay J. Schuttert* <br> Jay J. Schuttert (Nev. #8656) <br> jschuttert@efstriallaw.com <br> Alexandria L. Layton (Nev. #14228) <br> alayton@efstriallaw.com <br> Evans Fears & Schuttert LLP <br> 2300 West Sahara Avenue, Suite 950 <br> Las Vegas, NV 89102 <br> Telephone: (702) 805-0290 <br> Facsimile:  (702) 805-0291 <br><br> Counsel for Defendants Colt's Manufacturing Company, LLC, Colt Defense, LLC, Christensen Arms, Lewis Machine & Tool Company, LWRC International, LLC, and Patriot Ordnance Factory <br><br> – and – | */s/ Robert C. Van Arnam* <br> Camden R. Webb (*Pro Hac Vice*) <br> crwebb@williamsmullen.com <br> Robert C. Van Arnam (*Pro Hac Vice*) <br> rvanarnam@williamsmullen.com <br> Williams Mullen, PC <br> 301 Fayetteville Street, Suite 1700 <br> Raleigh, NC 27601 <br> Telephone: (919) 981-4000 <br> Facsimile:  (919) 981-4300 <br><br> – and – <br><br> Justin S. Feinman (*Pro Hac Vice*) <br> jfeinman@williamsmullen.com <br> Turner A. Broughton (*Pro Hac Vice*) <br> tbroughton@williamsmullen.com <br> Williams Mullen, PC <br> 200 South 10th Street, 16th Floor <br> Richmond, VA 23219 <br> Telephone: (804) 420-6000 <br> Facsimile:  (804) 420-6507 <br><br> – and – <br><br> John H. Mowbray <br> jmowbray@spencerfane.com <br> Mary E. Bacon <br> mbacon@spencerfane.com <br> Jessica Chong <br> jchong@spencerfane.com <br> Spencer Fane LLP <br> 300 South 4th Street, Suite 950 <br> Las Vegas, NV 89101 <br> Telephone: (702) 408-3414 <br> Facsimile:  (702) 408-3401 <br><br> Counsel for Defendant FN America, LLC |

Bryon J. Benevento (Applying *Pro Hac Vice*)
benevento.bryon@dorsey.com
Dorsey & Whitney, LLP
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111-2176
Telephone: (801) 933-8958
Facsimile:  (801) 933-7373

Counsel for Defendant Christensen Arms

*/s/ Danny C. Lallis*
Anthony Pisciotti (*Pro Hac Vice*)
apisciotti@pmlegalfirm.com
Ryan Erdreich (*Pro Hac Vice*)
rerdreich@pmlegalfirm.com
Danny C. Lallis  (*Pro Hac Vice*)
dlallis@pmlegalfirm.com
Pisciotti Malsch
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
Telephone: (973) 245-8100
Facsimile:  (973) 245-8101

– and –

Loren Young
lyoung@lgclawoffice.com
Lincoln, Gustafson & Cercos
3960 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Telephone: (702) 257-1997
Facsimile:  (702) 257-2203

Counsel for Defendant Noveske Rifleworks, LLC

*/s/ James B. Vogts*
James B. Vogts (*Pro Hac Vice*)
jvogts@smbtrials.com
Swanson, Martin & Bell LLP
330 N. Wabash Suite 3300
Chicago, IL 60611
Telephone: (312) 321-9100
Facsimile:  (312) 321-0990

– and –

Michael Nunez
mnunez@murchisonlaw.com
Murchison & Cumming, LLP
350 S. Rampart Blvd., Suite 320
Las Vegas, NV 89145
Telephone: (702) 360-3956
Facsimile:  (702) 360-3957

Counsel for Defendant Guns and Guitars, Inc.

*/s/ Ismail Amin*
Ismail Amin
iamin@talglaw.com
Jessica Guerra
jguerra@talglaw.com
The Amin Law Group, Ltd.
3753 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Telephone: (702) 990-3583
Facsimile:  (702) 441-2488

– and –

Christopher M. Chiafullo (Applying *Pro Hac Vice*)
cchiafullo@chiafullogroup.com
The Chiafullo Group, LLC
244 Fifth Avenue, Suite 1960
New York, NY 10001
Telephone: (908) 741-8531

Counsel for Defendants Discount Firearms and Ammo, LLC, DF&A Holdings, LLC, and Maverick Investments, LP

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** was electronically served on counsel of record this 20th day of December 2019, using the Court's CM/ECF System and via email to:

Matthew L. Sharp - matt@mattsharplaw.com
Richard H. Friedman - rfriedman@friedmanrubin.com
Joshua D. Koskoff - jkoskoff@kosskoff.com
Katherine L. Mesner-Hage - khage@koskoff.com
John F. Renzulli - jrenzulli@renzullilaw.com
Christopher Renzulli - crenzulli@renzullilaw.com
Jay J. Schuttert – jschuttert@efstriallaw.com
Alexandria L. Layton – alayton@efstriallaw.com
Bryon J. Benevento - benevento.bryon@dorsey.com
Patrick G. Byrne – pbyrne@swlaw.com
V.R. Bohman - vbohman@swlaw.com
Camden R. Webb – crwebb@williamsmullen.com
Robert C. Van Arnam – rvanarnam@williamsmullen.com
Justin S. Feinman – jfeinman@williamsmullen.com
Turner Broughton – tbroughton@williamsmullen.com
John H. Mowbray – jmowbray@spencerfane.com
Mary E. Bacon – mbacon@spencerfane.com
Jessica Chong – jchong@spencerfane.com
Anthony Pisciotti – apisciotti@pmlegalfirm.com
Ryan Erdreich – rerdreich@pmlegalfirm.com
Danny C. Lallis – dlallis@pmlegalfirm.com
Loren Young – lyoung@lgclawoffice.com
Ismail Amin - iamin@talglaw.com
Jessica Guerra – jguerra@talglaw.com
Christopher M. Chiafullo - cchiafullo@chiafullogroup.com
James Vogts - jvogts@smbtrials.com
Michael Nunez mnunez@murchisonlaw.com

*/s/ Scott C. Allan*
Scott C. Allan (*Pro Hac Vice*)
sallan@renzullilaw.com
Renzulli Law Firm, LLP
One North Broadway, Suite 1005
White Plains, NY
Telephone: (914) 285-0700
Facsimile:  (914) 285-1213