John H. Mowbray (NV Bar No. 1140)
jmowbray@spencerfane.com
Mary E. Bacon (NV Bar No. 12686)
mbacon@spencerfane.com
Jessica E. Chong (NV Bar No. 13845)
jchong@spencerfane.com
SPENCER FANE LLP
300 S. Fourth Street, Suite 950
Las Vegas, NV 89101
(702) 408-3400
(702) 408-3401 (facsimile)

Turner A. Broughton (*Pro Hac Vice*)
tbroughton@williamsmullen.com
Justin S. Feinman (*Pro Hac Vice*)
jfeinman@williamsmullen.com
WILLIAMS MULLEN, PC
200 South 10th Street, 16th Floor
Richmond, VA 23219
(804) 420-6000
(804) 420-6507 (facsimile)

Robert C. Van Arnam (*Pro Hac Vice*)
rvanarnam@williamsmullen.com
Camden R. Webb (*Pro Hac Vice*)
cwebb@williamsmullen.com
WILLIAMS MULLEN, PC
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
(919) 981-4000
(919) 981-4300 (facsimile)
*Counsel for Defendant FN America, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES PARSONS, individually and as Special Administrator of the Estate of Carolyn Lee Parsons, and ANN-MARIE PARSONS,<br><br>Plaintiffs,<br><br>v.<br><br>COLT'S MANUFACTURING COMPANY LLC, *et. al.*,<br><br>Defendants, | Civil Action No. 2:19-cv-01189-APG-GWF<br><br>**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE ORDER (ECF NO. 98) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

1

Defendants Colt's Manufacturing Company LLC; Colt's Defense LLC; Daniel Defense, Inc.; Patriot Ordnance Factory, Inc.; FN America, LLC; Noveske Rifle Works LLC; Christensen Arms; Lewis Machine & Tool Company; LWRC International LLC; Discount Guns & Ammo; DF&A Holdings LLC; Maverick Investments LP; Guns & Guitars, Inc.; and Sportsman's Warehouse, Inc. (collectively, "Defendants"), by counsel, pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 59-1, move the Court to partially reconsider its Order dated April 10, 2020 (ECF No. 98) (the "Order") that granted in part and denied in part Defendants' Motion to Dismiss (ECF No. 80) (the "Motion to Dismiss").

## INTRODUCTION AND SUMMARY OF MOTION

This motion respectfully requests that the Court reconsider its decision to deny *Chevron* deference to the ATF's Final Rule on Bump-Stock-Style Devices, as well as its firearm classifications and statutory interpretations.[1] *Chevron* deference mandates strict adherence to the ATF's determination that its Final Rule on Bump-Stock-Style Devices constituted a change in policy, and that prior to that point, the ATF did not consider bump stocks illegal. If rifles equipped with bump stocks were legal, then unmodified rifles were necessarily legal. The Court also should have applied *Chevron* deference to the ATF's interpretation of the phrase "designed to shoot" in the NFA's definition of machinegun, which the agency limits to firearms that can be converted to automatic fire through simple modification or elimination of existing component parts. Plaintiffs' allegations do not fit within this definition, and they should not be permitted to plead around the ATF's interpretation with conclusory allegations.

For these reasons, Plaintiffs failed to plausibly allege that the manufacture or sale of the Subject Rifles violated either federal or state law. Without a violation, Plaintiff could not demonstrate a "knowing violation" that satisfies the predicate exception to the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-03 ("PLCAA").

---

[1] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

## PROCEDURAL HISTORY

The Order reviewed three ATF rulings cited by Defendants (Nos. 82-2, 81-4, and 2006-2) (the "Rulings"), but the Court refused to afford them *Auer* deference[2] because the Rulings were not the product of notice and comment proceedings. *See* Order at 10 n.6 (citing *United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 688 (9th Cir. 2006)).[3] The Court did not directly examine the ATF's Final Rule on Bump-Stock-Style Devices (the "Final Rule"), which was rejected based on Plaintiffs' allegations that (1) bump stocks only recently emerged, and (2) the defendants knew that such devices allowed their AR-15s to fire automatically through simple modification. *Id.* at 11. Based on these facts and legal conclusions, the Court held that Plaintiffs plausibly alleged a wrongful death claim that satisfied the predicate exception to the PLCAA. *Id*.

## LEGAL STANDARD

Where reconsideration of a non-final order is sought, the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). The District of Nevada uses Rule 59(e) when a party seeks reconsideration of an interlocutory order. *Antonetti v. Skolnik*, No. 3:10-cv-00158, 2013 WL 593407, at *1 (D. Nev. Feb. 13, 2013). Though courts possess inherent authority to modify a non-final order for any sufficient cause, reconsideration under Rule 59(e) is generally limited to the following circumstances: (1) presentation of newly discovered evidence, (2) correction of clear error or manifest injustice, or (3) an intervening change in controlling law. *See School Dist. No. 1J. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

---

[2] The Order denies the ATF Rulings *Auer* deference (sometimes called, *Seminole Rock* deference), which is similar to *Chevron* deference, but concerns an agency's regulatory interpretations, rather than its statutory ones. *See* Order at 10 n.6. These ATF Rulings interpret statutory language, and therefore *Chevron*, not *Auer*, deference applies.

[3] In *TRW Rifle*, the Ninth Circuit determined that the statutory language at issue was clear and unambiguous, and therefore, the court did not need to look to the agency's interpretation of the statute to render an opinion. *See* 447 F.3d at 692 (performing the first step of *Chevron* deference).

3

## ARGUMENT

In its Order, the Court correctly pinpointed that, "[t]he parties [did] not fully address what weight should be accorded to the ATF rulings, which interpret the term 'designed to shoot' in statutory and regulatory definitions of machine guns." *See* Order at 10, n.6. Because the Rulings were not the product of notice and comment proceedings, the Court denied them *Chevron* and/or *Auer* deference, and instead afforded them deference "only insofar as they have the 'power to persuade.'" *Id.* (citing *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *Kisor v. Wilkie*, __U.S.__, 139 S. Ct. 2400, 2414 (2019)).[4] Respectfully, Defendants submit that the Court committed clear error by failing to apply the appropriate standard of deference to the ATF's Final Rule on Bump-Stock-Style Devices and interpretations of the phrase "designed to shoot." Deference to either agency action would compel dismissal of Plaintiffs' Complaint.

This action's continued viability rests on Plaintiffs' ability to plausibly allege a violation of either 18 U.S.C. § 922(b)(4) or Nev. Rev. Stat § 202.350(1)(b). Under no set of facts can Plaintiffs meet this burden because regulatory authority—in effect at the time of the shooting—confirms that the manufacture and sale of the Subject Rifles was entirely legal. The Final Rule, which was promulgated through notice-and-comment proceedings, confirms that AR-type rifles, ***even those modified with bump stocks***, were legal at the time of the shooting. The ATF did not declare bump stocks illegal until March 26, 2019, and criminal statutes are not subject to retroactive reinterpretation. If rifles equipped with bump stocks were legal at the time of the shooting, then logically unmodified rifles were legal too. This is true regardless of Defendants' relevant knowledge about the firearms, and regardless of the relative difficulty (or ease) of modifying the firearms.

ATF Rulings 82-2, 81-4, and 2006-2 (defining "designed to shoot") are also owed *Chevron* deference because the agency was explicitly and implicitly charged with interpreting the definition of a machinegun under the National Firearm Act ("NFA") and the Gun Control Act ("GCA"). While fulfilling this mandate, the ATF interpreted the "designed to shoot" standard and

---

[4] The Court did not directly address the deference that should have been afforded to the Final Rule.

repeatedly refused to criminalize the manufacture and sale of unmodified semiautomatic rifles. The ATF's interpretation and policy cannot be replaced, even at the pleading stage, with an alternate version proposed by Plaintiffs. As a result, the Complaint fails to plausibly allege a knowing violation that satisfies the predicate exception to the preclusive effect of the PLCAA.

## I. Analysis of Agency Interpretations Under *Mead* and *Chevron*

Determining the deference owed to an agency's interpretation of a statute requires multiple layers of analysis. In *United States v. Mead Corp.*, 533 U.S. 218 (2001), the Supreme Court created a threshold test, where *Chevron* analysis is only necessary when: (1) "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law"; and (2) "the agency interpretation claiming deference was promulgated in the exercise of that authority." 533 U.S. 218, 226–27 (2001). Both factors must be present before a reviewing court moves on to the familiar two-part test in *Chevron*.

Under *Chevron*, a reviewing court must first determine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. But if "the statute is silent or ambiguous with respect to the specific issue," the court does not "impose its own construction on the statute." *Id.* at 843. Instead, the reviewing court asks "whether the agency's answer is based on a permissible construction of the statute." *Id.* If permissible (*i.e.,* not arbitrary and capricious), then the court must defer to the agency interpretation. *See Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1164 (9th Cir. 2012).

As shown in the next two sections, the Final Rule and the ATF Rulings, all of which interpret phrases in the statutory definition of machinegun, satisfy the relevant factors in both *Mead* and *Chevron*, and therefore, the Court must defer to the agency's interpretations.

## II. The ATF's Final Rule on Bump-Stock-Style Devices and its Statutory Interpretations Satisfy the Test Articulated in *Mead*.

Though not addressed in the Order, the Final Rule is a clear expression of the ATF's rulemaking authority. And, contrary to the Order's determination, ATF Rulings 82-2, 81-4, and

2006-2 were also published to further the ATF's explicit and implied duty to interpret and administer the NFA and GCA, and the Rulings should have been afforded analysis under *Chevron*.

### A. The ATF Enjoys Express Authority to Make Rules.

The first inquiry under *Mead* asks if "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law." *Mead,* 533 U.S. at 226–27. The question is easily confirmed. Congress expressly delegated general rulemaking authority to the Attorney General to carry out the provisions of the GCA and NFA. *See* 18 U.S.C. § 926(a); 26 U.S.C. § 7801(a)(2). The Attorney General, in turn, empowered the Director of the ATF to "investigate, administer, and enforce the laws related to alcohol, tobacco, firearms, explosives, and arson." 28 C.F.R. § 0.130(a)(1)-(2). To fulfill this mandate, the ATF was empowered to promulgate "orders, delegations, determinations, rules, personnel actions, permits, agreements, grants, contracts, certificates, licenses, registrations, and privileges." *See* Mot. Dismiss at 13 n.13, ECF No. 80 (citing 27 C.F.R. § 70.701 (2011), *extended by* 28 C.F.R. § 0.133 (2019)). The agency's general rulemaking authority is reflected in its regulations codified at 27 C.F.R. § 479.1, *et seq*. *See* Defs.' Reply Mem. at 3 n.3, ECF No. 92 (citing 27 C.F.R. §§ 479.1–193).

### B. The Final Rule and the ATF Rulings Were Promulgated to Further the ATF's Express and Implied Authority to Administer the NFA and GCA.

The second step articulated in *Mead* asks whether the interpretation at issue was published to further the authority delegated to the agency by Congress. *Mead,* 533 U.S. at 226–27. This inquiry will be applied to the Final Rule first, and then to the other ATF Rulings.

#### (1) The Final Rule on Bump-Stock-Style Devices

If the policy was adopted pursuant to notice-and-comment, the second step in *Mead* should ordinarily be treated as satisfied. *See Sacora v. Thomas*, 628 F.3d 1059, 1066 (9th Cir. 2010). In fact, the Final Rule was subject to notice-and-comment proceedings. *See* 83 Fed. Reg. 66,516 (discussing its passage); 83 Fed. Reg. 13442-01 (copy of the Final Rule's notice of proposed rulemaking). As a result, the Final Rule on Bump-Stock-Style Devices was clearly promulgated to further the agency's legislative authority. *See Guedes v. ATF*, 920 F.3d 1, 20–21 (D.C. Cir. 2019), *cert. denied*, __U.S.__, 140 S. Ct. 789 (2020) (applying the *Mead* factors to the ATF's

promulgation of the Final Rule). Thus, the Final Rule satisfies both threshold factors articulated in *Mead*.

### (2) The ATF Rulings on "Designed to Shoot"

The Order states correctly that ATF Rulings 82-2, 81-4, and 2006-2 were not the subject of notice-and-comment rulemaking. Order at 10 n.6. That does not end the *Chevron* deference inquiry, however. An agency interpretation may carry the force of law, even if it is reached through a "means less formal than 'notice-and-comment' rulemaking." *Barnhart v. Walton*, 535 U.S. 212, 221 (2002). In making this assessment, courts look to the "interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time." *Id.* at 222.

The ATF Rulings satisfy this standard. In addition to explicit rulemaking authority, the ATF has also "been implicitly delegated interpretive authority to define ambiguous words or phrases in the NFA and the GCA." *See Aposhian v. Barr*, 374 F. Supp. 3d 1145, 1151 (D. Utah 2019). The ATF's classifications and interpretations are frequently cited,[5] and recent case law confirms they pass muster under *Mead*.

In *P.W. Arms, Inc. v. U.S.*, No. 2:15-cv-01990, 2016 WL 9526687 (W.D. Wash. Aug. 10, 2016), a firearms distributor challenged the ATF's determination that "7N6" ammunition qualified as "armor piercing ammunition," as that term is used in the GCA. *Id.* at *1. After surveying the federal landscape, the Western District of Washington found that courts had previously afforded *Chevron* deference to the ATF. *Id.* at *6 (citing *Firearms Import/Export Roundtable Trade Group v. Jones*, 854 F. Supp. 2d 1, 18 (D.D.C. 2012); *Modern Muzzleloading, Inc. v. Magaw*, 18 F. Supp. 2d 29, 36 (D.D.C. 1998)).[6] Applying the *Barnhardt* factors, the Court found (a) that the agency's interpretation of the statutory term was an interstitial question, (b) that the ATF's relative expertise

---

[5] *See* Order at 10 n.6.
[6] The court also noted that an informal classification letter had been denied *Chevron* deference, and a different statutory interpretation had been upheld under *Skidmore*. *See* 2016 WL 9526687, at *6 (citing *Innovator Enters. v. Jones*, 28 F. Supp. 3d 14, 22 (D.D.C. 2014) (letter); *Springfield, Inc. v. Buckles*, 116 F. Supp. 2d 85, 89 (D.D.C. 2000) (interpretation)).

was demonstrable, (c) that resolution of gaps in the GCA's firearm definitions was of "crucial importance," and (d) that that ATF's decision-making process "involves careful review." *Id.* at *8. Based on those factors, the court found that the ATF's classification was intended to carry the "force of law," and it was therefore appropriate for analysis under *Chevron*. *Id.* at *6, 8 (quoting *Mead*, 533 U.S. 218, 226–27).

The same applies here. There is no appreciable difference between the above classification of "armor piercing ammunition," and the interpretive Rulings cited by Defendants. Though not the product of notice-and-comment rulemaking, ATF Rulings 82-2, 81-4, and 2006-2 were each published to fill gaps in the definition of "machinegun" in the NFA:

- ATF Ruling 82-2 interprets "machinegun as defined in the National Firearms Act;"[7]
- ATF Ruling 81-4 interprets "machinegun as defined by 26 U.S.C. 5845(b);"[8] and
- ATF Ruling 2006-2 interprets "26 U.S.C. 5845(b): Definition of machinegun."[9]

These are not private letter rulings. Instead, each remains in effect today, and the ATF publishes them in its Federal Firearms Regulations Guide[10] and on its website.[11] They are intended to provide guidance and educate regulated parties, and the ATF is not required to use the notice-and-comment process, when the ruling is interpretive as opposed to legislative. *See Jones*, 854 F. Supp. at 13.

Because the ATF enacted these Rulings in furtherance of its duty to "interpret and administer" the NFA, Defendants respectfully submit that the Court should not have denied the ATF rulings analysis under *Chevron*. *See Aposhian*, 374 F. Supp. 3d at 1150; *see also Guedes v. ATF*, 356 F. Supp. 3d 109, 129 n.3 (D.D.C. 2019) (noting the "ATF's clear authority to interpret and administer" the relevant statutes), *aff'd*, 20 F.3d 1, 20–21 (D.C. Cir. 2019).

///

---

[7] https://www.atf.gov/firearms/docs/ruling/1982-2-kg-9-pistol-nfa-weapon/download
[8] https://www.atf.gov/resource-center/docs/atf-ruling-81-4pdf/download
[9] https://www.atf.gov/firearms/docs/ruling/2006-2-classification-devices-exclusively-designed-increase-rate-fire/download
[10] https://www.atf.gov/firearms/docs/guide/federal-firearms-regulations-reference-guide-2014-edition-atf-p-53004/download
[11] https://www.atf.gov/rules-and-regulations/firearms-rulings

**III.   The Court Should Apply *Chevron* Deference to the ATF's Interpretation of all Ambiguous Phrases in the Statutory Definition of "Machinegun."**

*Chevron* created a familiar two-step inquiry for determining the level of deference owed to administrative statutory interpretations. First, the reviewing court must ask whether the statutory phrase at issue is ambiguous. *See Alaska Wilderness League v. E.P.A.*, 727 F.3d 934, 937 (9th Cir. 2013). Second, if the statute is ambiguous or silent, the court must ask whether the agency's interpretation of the statute is based on a permissible construction of the statute—which it is unless the construction is arbitrary and capricious. *Chevron*, 467 U.S. at 843–844.

**A.   The Final Rule Was Promulgated by Notice-and-Comment Proceedings to Interpret Undefined Terms in the NFA and Legislate New Rights.**

The Final Rule on Bump-Stock-Style Devices is entitled to *Chevron* deference for three reasons. First, the Final Rule was a product of formal rulemaking, *see* 83 Fed. Reg. 66,516, and agency actions passed through notice-and-comment proceedings are almost always "entitled to the full deference mandated by" *Chevron*. *See Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001) (citing *McLean v. Crabtree*, 173 F.3d 1176, 1183 (9th Cir. 1999).

Second, the Final Rule was passed to interpret undefined phrases in the NFA. *See Aposhian*, 374 F. Supp. 3d at 1150 (identifying its interpretive nature). Indeed, the ATF expressly states that the Final Rule was passed to "bring clarity to the definition of 'machinegun'… specifically with respect to the terms 'automatically' and 'single function of the trigger.'" *See* Mot. Dismiss at 17–18 (citing ATF Final Rule, *Bump-Stock Type Devices*, 83 Fed. Reg. 66,514-54). The statutory phrases interpreted by the Final Rule ("automatically" and "single function of the trigger") were ambiguous, and the conclusions drawn from the ATF's application of those phrases to bump stocks should be given *Chevron* deference. *See Guedes*, 356 F. Supp. 3d at 131. While clarifying these phrases, the Final Rule addresses "the 'plain meaning' of the statute" and invokes "the agency's charge to implement" the NFA and GCA. *See Guedes*, 920 F.3d at 8 (citing 83 Fed. Reg. at 66,527). By addressing these factors, the ATF was making a clear invocation of *Chevron* deference. *Id.*

9

1    Third, the Final Rule also serves a legislative purpose in that it fundamentally alters the
2 ATF's previous position on bump stocks, and by doing so, the Rule makes clear that possession of
3 bump-stock devices will become unlawful at a future date, not before. *See Guedes*, 920 F.3d at 18
4 (discussing its legislative intent based on its future criminalization of previously lawful behavior).
5 And, legislative rules have the "full force and effect of law." *Encino Motorcars, LLC v. Navarro*,
6 __U.S.__, 136 S. Ct. 2117, 2122 (2016). For these reasons, the Final Rule on Bump Stock Style
7 Devices is entitled to *Chevron* deference.

### B. The ATF Rulings Further the ATF's Express and Implied Authority to Administer the NFA and GA.

The ATF Rulings are also entitled to *Chevron* deference. The phrase "designed to shoot" in the definition of machinegun is ambiguous because the NFA does not contain a specific definition for the phrase, which is susceptible to multiple reasonable interpretations. *See Ariz. Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1253 (9th Cir. 2007) ("A statute is ambiguous if it is susceptible to more than one reasonable interpretation.").[12] Seeking to provide clarity, ATF Ruling 82-2 interprets "designed to shoot" to mean firearms that have not previously functioned as machineguns but "possess design features which facilitate full automatic fire by simple modification or elimination of *existing component parts*."[13]

Under the two-step framework articulated in *Chevron*, an agency's interpretation of an ambiguous statute will only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Connors v. Nat'l Transp. Safety Bd.,* 844 F.3d 1143, 1145 (9th Cir. 2017) (quoting *Andrzejewski v. FAA*, 563 F.3d 796, 799 (9th Cir. 2009)).

There is no reason to set aside this agency interpretation. The ATF has been promulgating rules governing the term "machinegun" for decades. *See, e.g., U.S. v. Dodson*, 519 F. App'x 344, 348–49 & n.4 (6th Cir. 2013) (acknowledging ATF's role in interpreting the NFA's definition of "machinegun"); *York v. Sec'y of Treasury*, 774 F.2d 417, 419–20 (10th Cir. 1985) (recognizing the

---

[12] The Final Rule on Bump-Stock-Style Devices expresses the ATF's position that several phrases in the definition of machinegun are ambiguous and require additional explanation. 83 Fed. Reg. 66,514.
[13] ATF Rulings 81-4 and 2006-2 also both interpret the statutory definition of machinegun, and neither applies the term to unmodified firearms.

ATF's leading role with respect to firearms); *F.J. Vollmer Co. v. Higgins*, 23 F.3d 448, 449–51 (D.C. Cir. 1994) (upholding an ATF determination regarding machinegun receivers).

Moreover, the Sixth Circuit has affirmed the use of an "arbitrary and capricious" standard consistent with *Chevron* deference, when trial courts review the ATF's interpretation of this same language. *See, e.g., U.S. v. One TRW, Model M14, 7.62 Caliber Rifle*, 294 F. Supp. 2d 896, 900 (E.D. Ky. 2003), *aff'd*, 441 F.3d 416 (6th Cir. 2006); *U.S. v. One Harrington & Richardson Rifle, Model M-14, 7.62 Caliber*, 278 F. Supp. 2d 888, 892 (W.D. Mich. 2003), *aff'd*, 100 Fed. Appx. 482 (6th Cir. 2004). Because the interpretation is neither arbitrary nor capricious, the ATF's definition of "designed to shoot" is owed *Chevron* deference.

### IV. Proper Deference Compels Dismissal.

A reviewing court is "'prohibited from substituting [its] own construction of a statutory provision for a reasonable interpretation made by the demonstrator of an agency' when Congress has not directly addressed the provision's meaning." *Connors v. Nat'l Transp. Safety Bd.*, 844 F.3d 1143, 1145 (9th Cir. 2017) (quoting *Redmond–Issaquah R.R. Pres. Ass'n v. Surface Transp. Bd.*, 223 F.3d 1057, 1061 (9th Cir. 2000)) (internal quotations omitted).

If *Chevron* deference is afforded to the Final Rule on Bump-Stock-Style Devices and the ATF Rulings, Plaintiffs do not plausibly allege a violation of a federal or state law. First, the Final Rule on Bump-Stock-Style Devices explicitly holds that the ATF did not classify bump stocks as machineguns at the time of the Las Vegas shooting. This determination cannot be changed retroactively. *See* 83 Fed. Reg. at 66,525, 66,530. If firearms equipped with bump stocks were legal at the time, then unmodified rifles cannot be considered machineguns based on their ability to be modified with bump stocks. Second, the ATF Rulings provide guidance for ambiguous statutory terms, and those interpretation should not be set aside in favor of conclusory allegations in the Complaint. For both reasons, Defendants respectfully request the Court reconsider its determination that Plaintiffs adequately pled a cause of action exempt from the PLCAA.

/ / /

/ / /

/ / /

**A.  The Final Rule Clearly Holds That Bump Stocks Were Legal at the Time of the Shooting.  Therefore, Modification of the Subject Rifles Cannot Plausibly Implicate a Violation of the NFA or GCA.**

The Motion to Dismiss addresses the fact that the Final Rule on Bump-Stock-Style Devices did not make bump stocks illegal until March 26, 2019.  *See* Mot. Dismiss at 17–18.  This later date was selected because the ATF acknowledged that the Final Rule "constituted a change from ATF's prior interpretations" of the term machinegun.  *See* 83 Fed. Reg. at 66,517.  Thus, the ATF did not previously consider AR-type rifles, *even those modified with bump stocks*, to be machineguns.  *See* 83 Fed. Reg. at 66,523 (announcing that a person "in possession of a bump-stock-type device *is not acting unlawfully* unless they fail to relinquish or destroy their device after the effective date of this regulation." (emphasis added)).

The ATF's acknowledgement of its previous position has not been addressed by Plaintiffs, and it reveals a simple truth.  If the ATF considered bump stocks legal at the time of the shooting, then it must also have considered the underlying unmodified firearms legal.  Plaintiffs try to limit the Final Rule's application to bump stocks alone, not the underlying rifles, *see* Pls.' Opp'n Brief at 15, ECF No. 88, but Plaintiffs' theory of the case is that the Subject Rifles were illegal machineguns because they could be readily converted to automatic fire through the addition of bump stocks.  This theory defies simple logic.  If firearms modified with bump stocks were not machineguns prior to the ATF's change represented by the Final Rule, then the Subject Rifles cannot be classified as machineguns based on their ability to be retrofitted with bump stocks.  It would make no sense for *modified* rifles to be legal, and for *unmodified* rifles to be illegal.[14]

The legality and illegality of bump stocks is not subject to retroactive revision.  *See* U.S. Const. Art. I, Sec. 9 (Ex Post Facto Clause).  The ATF directly addressed this issue by stating that its Final Rule "would criminalize only future conduct," and that "individuals are subject to criminal liability only for possessing bump-stock-style devices *after* the effective date of the

---

[14]  Notably, the Final Rule did not provide that semiautomatic rifles are illegal machineguns or that owners had to destroy or abandon them.  Nor has ATF ever authored such an opinion or rule.  Even after the effective date of the Final Rule, the party retrofitting a semiautomatic rifle with a bump stock would be the manufacturer of a machinegun, not the original manufacturer of the semiautomatic rifle.  *See* 83 Fed. Reg. at 66,545.

regulation, not for possession before that date." 83 Fed. Reg. at 66,525 (emphasis in original). The ATF could not make prior possession illegal because doing so would "make[] an action, done before the passing of the law, and which was innocent when done, criminal." *Id.* (citing *Calder v. Bull*, 3 U.S. 386 (1798)). The same principle must be applied here because Plaintiffs seek to improperly hold Defendants liable for their firearms' ability to be retrofitted with previously legal aftermarket parts.

In its ruling, the Court did not examine the Final Rule with any specificity, nor did the Court specify the level of deference it applied, but it could not have been *Chevron* deference. *See* Order at 10. Instead, the Court dismissed the ATF's determination that bump stocks were legal at the time of this shooting based on allegations that "(1) bump stocks have emerged only in the past decade and (2) the defendants knew these bump stocks allowed their AR-15s to fire automatically through simple modification." *Id.* at 11. Even if true, neither fact rebuts the ATF's determination that AR-type rifles, even those *modified* with bump stocks, were legal at the time of this tragedy. For the reasons explained above, this determination was due *Chevron* deference, and it precludes a finding that *unmodified* rifles violate federal or state law.

### B. The ATF's Statutory Interpretations Should Not be Set Aside in Favor of Legal Conclusions Alleged in the Complaint.

The Court analyzed each of the three ATF Rulings cited in the Motion to Dismiss, but set aside each in favor of conclusory allegations in the Complaint. Plaintiffs fail to provide an adequate reason to set aside the ATF's interpretation that modifications must concern existing parts. Instead, Plaintiffs argue that the "definition of 'designed to shoot' is satisfied because installation of a bump stock involves elimination of the existing stock." This argument is unavailing. The addition of a bump stock cannot be considered a modification or elimination of an existing part. Rather, the addition of a bump stock converts, as the ATF repeatedly ruled, "***an otherwise semiautomatic firearm*** into a machinegun." *See* ATF Final Rule, *Bump-Stock-Style Devices*, 83 Fed. Reg. at 66,514, -515, -518, -522, -530 (emphasis added).[15]

---

[15] For clarity, simple elimination of the existing stocks on the Subject Rifles does not allow automatic fire or convert them to machineguns.

13

Realizing that their allegations cannot satisfy the agency's interpretation, Plaintiffs argue that any "disagreement on the technical meaning of 'existing component part' in the context of a bump stock modification…cannot be settled at the pleading stage." *See* Pls.' Opp'n Brief at 14, ECF No. 88. The Court found this argument persuasive, and it did not require proof that the ATF's interpretation was either arbitrary or capricious. *See* Order at 10. This was clear error for two reasons. First, legal conclusions are not owed deference at the pleading stage. *See Teixeira v. County of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). And second, if a reviewing Court is required to defer to an agency's reasonable interpretation of a statute, then assuredly, a litigant may not escape dismissal by substituting his or her own legal construction of the statute. *See Connors*, 844 F.3d a 1145 (quoting *Redmond–Issaquah R.R. Pres. Ass'n*, 223 F.3d at 1061). Because the allegations fail to satisfy the agency's interpretation of the "designed to shoot" automatically, Plaintiffs' wrongful death action fails to articulate plausible grounds to satisfy the PLCAA's predicate exception. 15 U.S.C. § 7903(5)(A)(iii).

## CONCLUSION

For the reasons identified above, Defendants respectfully request that the Court grant the Motion for Reconsideration and, on reconsideration, apply *Chevron* deference to the ATF's Final Rule and statutory interpretations, conclude that no violation of federal or state law was plausibly alleged, grant Defendants' Motion to Dismiss Plaintiffs' wrongful death claim pursuant to the PLCAA, and award such other and further relief it deems proper.

Dated this 30th day of April 2020.

| SPENCER FANE LLP | THE AMIN LAW GROUP, LTD. |
|---|---|
| */s/ Jessica Chong* | */s/ Ismail Amin* |
| John H. Mowbray (Nev. Bar. No. 1140) | Ismail Amin (Nev. Bar No. 9343) |
| jmowbray@spencerfane.com | iamin@talglaw.com |
| Mary E. Bacon (Nev. Bar No. 12686) | 3753 Howard Hughes Parkway, Suite 200 |
| mbacon@spencerfane.com | Las Vegas, NV 89169 |
| Jessica Chong (Nev. Bar. No. 13845) | Telephone: (702) 990-3583 |
| jchong@spencerfane.com | Facsimile: (702) 441-2488 |
| 300 South 4th Street, Suite 950 | |
| Las Vegas, NV 89101 | Christopher M. Chiafullo (*Pro Hac Vice*) |
| Telephone: (702) 408-3414 | cchiafullo@chiafullogroup.com |

14

| | |
|---|---|
| Facsimile: (702) 408-3401<br><br>Camden R. Webb (*Pro Hac Vice*)<br>crwebb@williamsmullen.com<br>Robert C. Van Arnam (*Pro Hac Vice*)<br>rvanarnam@williamsmullen.com<br>Williams Mullen, PC<br>301 Fayetteville Street, Suite 1700<br>Raleigh, NC 27601<br>Telephone: (919) 981-4000<br>Facsimile: (919) 981-4300<br><br>Justin S. Feinman (*Pro Hac Vice*)<br>jfeinman@williamsmullen.com<br>Turner A. Broughton (*Pro Hac Vice*)<br>tbroughton@williamsmullen.com<br>Williams Mullen, PC<br>200 South 10th Street, 16th Floor<br>Richmond, VA 23219<br>Telephone: (804) 420-6000<br>Facsimile: (804) 420-6507<br><br>*Counsel for Defendant FN America* | The Chiafullo Group, LLC<br>244 Fifth Avenue, Suite 1960<br>New York, NY 10001<br>Telephone: (908) 741-8531<br><br>*Counsel for Defendants Discount Firearms and Ammo, LLC, DF&A Holdings, LLC, and Maverick Investments, LP* |
| PISCIOTTI MALSCH<br>*/s/ Ryan Erdreich*<br>Anthony Pisciotti (*Pro Hac Vice*)<br>apisciotti@pmlegalfirm.com<br>Ryan Erdreich (*Pro Hac Vice*)<br>rerdreich@pmlegalfirm.com<br>30 Columbia Turnpike, Suite 205<br>Florham Park, NJ 07932<br>Telephone: (973) 245-8100<br>Facsimile: (973) 245-8101<br><br>Loren S. Young, Esq.<br>lyoung@lgclawoffice.com<br>Lincoln Gustafson & Cercos, LLP<br>3960 Howard Hughes Parkway, Suite 200<br>Las Vegas, NV 89169<br>Telephone: (702) 257-1997<br>Facsimile: (702) 257-2203<br><br>*Counsel for Defendant Noveske Rifleworks, LLC* | MURCHISON & CUMMING, LLP<br>*/s/ Michael Nunez*<br>Michael Nunez (Nev. 10703)<br>mnunez@murchisonlaw.com<br>350 S. Rampart Blvd., Suite 3200<br>Las Vegas, NV 89145<br>Telephone: (702) 360-3856<br>Facsimile: (702) 360-3957<br><br>James Vogts (*Pro Hac Vice*)<br>jvogts@smbtrials.com<br>Swanson, Martin & Bell LLP<br>330 N. Wabash, Suite 3300<br>Chicago, IL 60611<br>Telephone: (312) 321-9100<br>Facsimile: (312) 321-0990<br><br>*Counsel for Defendant Guns & Guitars, Inc.* |

| | |
|---|---|
| SNELL & WILMER L.L.P.<br><br>/s/ V.R. Bohman<br>Patrick G. Byrne (Nev. Bar No. 7636)<br>pbyrne@swlaw.com<br>V.R. Bohman (Nev. Bar No. 13075)<br>vbohman@swlaw.com<br>3883 Howard Hughes Parkway, Suite 1100<br>Las Vegas, NV 89169<br>Telephone: (702) 784-5200<br>Facsimile: (702) 784-5252<br><br>*Counsel for Defendants Daniel Defense, Inc., and Sportsman's Warehouse, Inc.* | RENZULLI LAW FIRM, LLP<br><br>/s/ Scott C. Allan<br>John F. Renzulli (*Pro Hac Vice*)<br>jrenzulli@renzullilaw.com<br>Christopher Renzulli (*Pro Hac Vice*)<br>crenzulli@renzullilaw.com<br>Scott C. Allan (*Pro Hac Vice*)<br>sallan@renzullilaw.com<br>Renzulli Law Firm, LLP<br>One North Broadway, Suite 1005<br>White Plains, NY 10601-2310<br>Telephone: (914) 285-0700<br>Facsimile: (914) 285-1213<br><br>Jay J. Schuttert (Nev. Bar No. 8656)<br>jschuttert@efstriallaw.com<br>Alexandria L. Layton (Nev. Bar No. 14228)<br>alayton@efstriallaw.com<br>2300 West Sahara Avenue, Suite 950<br>Las Vegas, NV 89102<br>Telephone: (775) 805-0290<br>Facsimile: (775) 805-0291<br><br>*Counsel for Defendants Colt's Manufacturing Company, LLC, Colt Defense, LLC, Christensen Arms, Lewis Machine & Tool Company, LWRC International, LLC, and Patriot Ordnance Factory, Inc.* |

**CERTIFICATE OF SERVICE**

On April 30, 2020, I certify that a true and correct copy of **DEFENDANTS' MOTION FOR RECONSIDERATION OF THE ORDER (ECF NO. 98) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** was filed using the Court's CM/ECF system, which will electronically notify all counsel of record including the following.

Alexandria LaVonne Layton    alayton@efstriallaw.com, fradford@efstriallaw.com

Anthony Michael Pisciotti    apisciotti@pmblegalfirm.com

Camden R. Webb    crwebb@williamsmullen.com, awilliams@williamsmullen.com, bdurand@williamsmullen.com

Christopher Renzulli    crenzulli@renzullilaw.com

Danny C. Lallis    dlallis@pmlegalfirm.com, docket@pmlegalfirm.com

Ismail Amin    iamin@talglaw.com, acurren@talglaw.com, dflandez@talglaw.com, jguerra@talglaw.com, kvang@talglaw.com, tamin@talglaw.com

James Brian Vogts    jvogts@smbtrials.com

Jay Joseph Schuttert    jschuttert@efstriallaw.com, alayton@efstriallaw.com, bmarshall@efstriallaw.com, fradford@efstriallaw.com, rbennett@efstriallaw.com

Jessica Chong    jchong@spencerfane.com

John Renzulli    jrenzulli@renzullilaw.com

John H Mowbray    mowbraylaw@earthlink.net, amiller@spencerfane.com, jchong@spencerfane.com, jmowbray@spencerfane.com

Joshua David Koskoff    JKoskoff@Koskoff.com, cobremski@koskoff.com, lgullotta@koskoff.com

Justin S. Feinman    jfeinman@williamsmullen.com

| | |
|---|---|
| 1 | Loren Young    lyoung@lgclawoffice.com, bpederson@lgclawoffice.com, creilly@lgclawoffice.com, earthur@lgclawoffice.com, kmack@lgclawoffice.com, mbailus@lgclawoffice.com, sibarra@lgclawoffice.com, ssplaine@lgclawoffice.com |

Loren Young    lyoung@lgclawoffice.com,
bpederson@lgclawoffice.com, creilly@lgclawoffice.com,
earthur@lgclawoffice.com, kmack@lgclawoffice.com,
mbailus@lgclawoffice.com, sibarra@lgclawoffice.com,
ssplaine@lgclawoffice.com

Mary E Bacon    mbacon@spencerfane.com,
amiller@spencerfane.com, ekuchman@spencerfane.com

Matthew L. Sharp    matt@mattsharplaw.com,
cristin@mattsharplaw.com, suzy@mattsharplaw.com

Michael J. Nunez    mnunez@murchisonlaw.com,
khaman@murchisonlaw.com, ngarcia@murchisonlaw.com

Richard Friedman    rfriedman@friedmanrubin.com,
dwatkins@friedmanrubin.com,
wcummings@friedmanrubin.com

Robert C. Van Arnam    rvanarnam@williamsmullen.com,
mlennox@williamsmullen.com

Ryan Erdreich    rerdreich@pmlegalfirm.com

Scott Charles Allan    sallan@renzullilaw.com

Turner A. Broughton    tbroughton@williamsmullen.com

V. R. Bohman    vbohman@swlaw.com,
docket_las@swlaw.com, lluxford@swlaw.com,
thiggins@swlaw.com

/s/ Adam Miller
Spencer Fane LLP