UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES PARSONS, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF CAROLYN LEE PARSONS, *et al.*,<br><br>Plaintiffs<br><br>v.<br><br>COLT'S MANUFACTURING COMPANY, LLC, *et al.*,<br><br>Defendants | Case No.: 2:19-cv-01189-APG-EJY<br><br>**Order Denying Defendants' Motion for Reconsideration**<br><br>[ECF No. 107] |

The defendants move for reconsideration of my order denying their motion to dismiss plaintiffs James and Ann-Marie Parsons' wrongful death claim. ECF No. 98. They argue that I committed clear error by failing to apply *Chevron* deference to the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) Final Rule on Bump-Stock-Style Devices (the Bump Stock Rule) and other rulings interpreting the definition of a machine gun. They argue that, if given proper deference, these agency interpretations mandate dismissal of the wrongful death claim as barred under the Protection of Lawful Commerce in Arms Act (PLCAA). I deny the defendants' motion because the Bump Stock Rule and other ATF rulings are not eligible for *Chevron* deference or do not merit dismissal of the Parsons' wrongful death claim.

**I.   BACKGROUND**

The Parsons assert a wrongful death claim against the defendants for manufacturing the AR-15 weapons used to kill their daughter in the October 1, 2019 Las Vegas shooting. ECF No. 1 at 29-32. The defendants moved to dismiss that claim as barred under the PLCAA. ECF No. 80. In relevant part, the PLCAA only permits "action[s] in which a manufacturer or seller of a

1  [firearm] knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii).  The Parsons argued that the PLCAA permits their action because they alleged that the defendants knowingly violated federal and state machine gun prohibitions. *See* 18 U.S.C. § 922(b)(4); Nev. Rev. Stat. § 202.350(1)(b).  For purposes of the federal prohibition, "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

The defendants pointed to several ATF rulings interpreting this definition and its regulatory counterpart. ECF No. 80 at 16-17.  Ruling 82-2 defined the term "designed to shoot" as "possess[ing] design features which facilitate full automatic fire by simple modification or elimination of existing component parts."  Ruling 81-4 addressed whether an AR-15 Auto Sear conversion kit consisting of a "sear mounting body, sear, return spring, and pivot pin" was "a combination of parts designed and intended for use in converting a weapon . . . ."  And Ruling 2006-2 addressed whether an early bump stock device was "a part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun."  The defendants provided me no information on how the ATF reached these determinations in the briefing on the motion to dismiss.

The defendants also pointed to the ATF's Bump Stock Rule, arguing that bump stocks were legal at all times relevant to this lawsuit. ECF No. 80 at 17-19.  Prior to the Bump Stock Rule, the ATF had issued ten letter rulings concluding that bump stocks themselves were not machine guns. 83 Fed. Reg. 66514-01, 66517.  But after the October 1 shooting, the ATF promulgated the Bump Stock Rule to "clarif[y]" the statutory definition of machine gun:

> For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

*Id.* at 66543, 66554. The defendants did not argue, as they do now, that the Bump Stock Rule, if afforded *Chevron* deference, mandates dismissal of the plaintiffs' claims.

I denied the defendants' motion to dismiss because the Parsons pleaded numerous facts showing a plausible claim for relief, including "the defendants' use of stocks that can be easily replaced with bump stocks, the defendants' marketing of the AR-15's modularity and military bona fides, the defendants' knowledge that commercially-available bump stocks enabled AR-15s to fire automatically, Colt's agreement with Slide Fire [regarding the sale of a Colt Competition AR-15 with an integrated bump stock], and Christensen Arms' recognition that the AR-15 could be modified to fire automatically." ECF No. 98 at 9. The defendants now move for reconsideration. ECF No. 107. I decline to reconsider my previous ruling.

## II. DISCUSSION

### A. Reconsideration Standard

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient" so long as it has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

3

*Corp.*, 460 U.S. 1, 12 (1983) (citing Fed. R. Civ. P. 54(b)).  "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* LR 59–1(a).  A district court may also reconsider its decision if "other, highly unusual, circumstances" warrant it. *Sch. Dist. No. 1J, Multnomah Cty., Or.*, 5 F.3d at 1263.  However, "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).  And a motion for reconsideration may not be based on arguments or evidence that could have been raised previously. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

### B. *Chevron* and *Mead* Standards

*Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.* prescribes a two-step test for judicial review of agency interpretations of federal statutes. 467 U.S. 837 (1984).  First, I must assess "whether Congress has directly spoken to the precise question at issue." *Id.* at 842.  If so, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43.  If "the statute is silent or ambiguous with respect to the specific issue," *Chevron's* second step requires me to defer to the agency's interpretation as long as it is "based on a permissible construction of the statute." *Id.* at 843.

However, the Supreme Court clarified in *United States v. Mead Corporation* that *Chevron* applies only when (1) "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law" and (2) "the agency interpretation claiming deference was promulgated in the exercise of that authority." 533 U.S. 218, 226-27 (2001).  An

4

agency interpretation may carry the force of law even if it is reached through a "means less formal than 'notice-and-comment' rulemaking." *Barnhart v. Walton*, 535 U.S. 212, 221 (2002). In making this assessment, I must look to the "interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time." *Id.* at 222.

### C. ATF Rulings

With respect to the first *Mead* requirement, Congress delegated authority to administer the National Firearms Act (NFA) to the Attorney General, who in turn delegated that authority to the ATF. 26 U.S.C. § 7801(a)(2)(A); 28 C.F.R. § 0.130(a).  The defendants argue that although not the product of notice and comment proceedings, the ATF rulings satisfy the second *Mead* requirement because they were "enacted in furtherance of [the ATF's] duty to interpret and administer the NFA." ECF No. 107 at 8 (quotation omitted).  The defendants point to a Western District of Washington decision concluding that a similar ruling was eligible for *Chevron* deference. *Id.* at 7 (citing *P.W. Arms, Inc. v. U.S.*, No. 2:15-cv-01990, 2016 WL 9526687 (W.D. Wash. Aug. 10, 2016)).  But the judge in that case had the benefit of the parties addressing the ATF's process in coming to its ruling, which he had discussed in detail in a prior order. *P.W. Arms*, 2016 WL 9526687, at *8 ("Finally, as discussed in this Court's previous order, the Form 6 process by the ATF involves careful review of applications, inspection of shipped materials, and testing and consideration of the shipped materials.").

Here, the defendants pointed me in their underlying motion to informal rulings appearing on the ATF's website without any context for understanding how they were decided. *See* ECF No. 80 at 16-17 (linking to the ATF website).  Even in their motion to reconsider, the defendants

5

still fail to explain the ATF's decision-making process. ECF No. 107 at 7-8.  So I have no basis to evaluate "the careful consideration the Agency has given the question over a long period of time." *Barnhart*, 535 U.S. at 222; *see also Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14, 22 (D.D.C. 2014) (denying *Chevron* deference to a "brief and informal" ATF classification letter containing "hardly any reasoning").   Because the defendants did not, and still do not, show that the rulings are eligible for *Chevron* deference, I deny this aspect of their motion.

      As independent grounds for my earlier decision, I noted in my prior order that passing references to weapons as semi-automatic rifles prior to installation of third-party components in rulings 81-4 and 2006-2 did not support the defendants' position because the rulings addressed the third-party components, not the rifles themselves. *Id.*  These passing references do not merit *Chevron* deference under *Mead's* second step because they were not promulgated in the exercise of the ATF's rulemaking authority.  And even if accorded *Chevron* deference, Ruling 82-2 does not merit reconsideration of my prior order because I found that the Parsons plausibly alleged that the defendants' AR-15s "possess[] design features which facilitate full automatic fire by simple modification or elimination of existing component parts[,]" as referenced in Ruling 82-2. ECF No. 98 at 10 (citing ATF Ruling 82-2).  So I deny the defendants' motion for these reasons as well.

      **D.  Bump Stock Rule**

      The defendants argue that because the Bump Stock Rule "clearly holds" that bump stocks were legal at the time of the October 1 shooting, AR-15s that could be equipped with bump stocks must have been legal as well. ECF No. 107 at 12–13.  The Parsons respond that while the Bump Stock Rule's prohibition of bump stocks is eligible for deference, its retroactive blessing

of bump stocks prior to the issuance of the Bump Stock Rule is not eligible for deference under the second step of *Mead*. ECF No. 110 at 5-8.

The defendants' argument is not focused on the text of the Bump Stock Rule's new regulation itself, but the Bump Stock Rule's description of the ATF's prior interpretations of the statutory terms "single function of the trigger" and "automatically." 83 Fed. Reg. 66514-01, 66517. But the defendants do not argue for deference to these interpretations themselves, which the ATF admits "did not include extensive legal analysis of the statutory terms 'automatically' or 'single function of the trigger.'" *Id.* at 66516. The ATF describes these interpretations as "mistakes." *Id.* at 66523. So to the extent the defendants argue that the ATF's descriptions of its prior interpretations are entitled to deference, these descriptions were not promulgated in the exercise of the ATF's rulemaking authority.

In reply, the defendants focus on recent circuit court decisions holding that the Bump Stock Rule is "a legislative rule establishing when bump-stock possession will become unlawful, not an interpretive rule indicating it has always been unlawful." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 20 (D.C. Cir. 2019); *see also Aposhian v. Barr*, 958 F.3d 969, 980 (10th Cir. 2020). The Ninth Circuit has not addressed the question. The defendants argue that retroactive application of such a legislative rule is impermissible in a civil case like this one, citing the Northern District of California's decision in *Laurence v. United States*, No. 3:93-cv-0381, 1993 WL 266657 (N.D. Cal. July 8, 1993). As the defendants themselves state, "the plaintiff's theory of liability [in that case] was premised on the retroactive application of a statutory standard of care created by legislation enacted after the alleged misconduct." ECF No. 111 at 5 (citing *Laurence*, 1993 WL 266657, at *7). Here, however, the Parsons' claim is contingent on a statute that has prohibited "any weapon which shoots, is

designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" at all times relevant to this suit. 26 U.S.C. § 5845(b); 18 U.S.C. § 922(b)(4).  And I previously found that the Parsons have alleged facts plausibly showing the defendants' knowing violations of that statute prior to the ATF's promulgation of the Bump Stock Rule. ECF No. 98 at 9.  Because neither the Bump Stock Rule nor the other ATF rulings foreclose the Parsons' claim that the defendants "knowingly violated" the federal machine gun prohibition as a matter of law, I deny the defendants' motion for reconsideration.

### III.   CONCLUSION

I THEREFORE ORDER that the defendants' **motion for reconsideration (ECF No. 107) is DENIED.**

DATED this 20th day of July, 2020.

ANDREW P. GORDON  
UNITED STATES DISTRICT JUDGE